UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANTA ROSA CONSULTING, LLC.,

        Plaintiff,

vs.

RICKY ARREDONDO,

        Defendant.
_____/

Case No. 09-CV-13368

HON. GEORGE CARAM STEEH

## ORDER DENYING MOTION TO DISMISS AND DENYING MOTION FOR CHANGE OF VENUE [DOC. 7]

This matter arises out of a claim of fraudulent inducement and breach of contract by Santa Rosa Consulting, LLC against defendant Ricky Arredondo. Defendant filed a motion to dismiss for lack of personal jurisdiction, motion to dismiss for improper venue, and motion for a change of venue. Oral argument was held before the court on December 17, 2009. For the reasons stated from the bench, as well as in the opinion below, defendant's motions are DENIED without prejudice.

## FACTUAL BACKGROUND

Plaintiff Santa Rosa Consulting, LLC ("Santa Rosa") is a Michigan resident, with its principal place of business in Southfield, Michigan. Santa Rosa is in the business of providing information technology and management consulting services to the healthcare industry. Richard Helppie is the founder and managing partner of Santa Rosa.

Defendant Ricky Arredondo in a citizen of Texas. He and his family have resided in Flower Mound, Texas, a Dallas suburb, for eight years. Arredondo is a professional in information technology and consulting services in the healthcare industry. Arredondo

is employed by Oracle USA as a Senior Director in the Oracle Consulting Services. He is a "remote worker" for Oracle, working out of his home. Arredondo has a Texas driver's license, pays Texas property taxes, and is registered to vote in Texas. He was served with the Summons and Complaint in this matter at his home in Texas.

Arredondo and Helppie are former colleagues, with Arredondo having previously worked for Helppie at Superior Consulting Company. In spring 2008, Helppie and Arredondo ran into each other at an industry conference in Chicago. Arredondo told Helppie that he was seeking venture capital for a new company, EHSS, which he had formed as a side project with a partner. Arredondo and Helppie exchanged telephone calls and e-mails regarding Helppie's interest in possibly capitalizing Arredondo's new business venture. During telephone calls in May and June 2008, Helppie advised Arredondo that he was not interested in the EHSS venture.

In 2008, Santa Rosa began operations, and Helppie was looking for experienced people with client contacts to help grow Santa Rosa's business. Arredondo expressed an interest in becoming a part of Santa Rosa. The parties disagree whether Helppie invited Arredondo to Detroit (Arredondo Aff. at ¶5), or whether Arredondo requested to come to Detroit (Helppie Decl. at ¶6). On June 17, 2008, Arredondo did fly to Detroit to meet with Helppie to discuss the formation of Santa Rosa, and Arredondo's role in the company.

The parties disagree whether Arredondo was a full-time employee (Helppie Decl. at ¶9)) or an equity owner with a stake in the company (Arredondo Aff. at ¶5). Arredondo understood that Helppie wanted him to quit his employment at Oracle and other business ventures, and work for Santa Rosa full-time. Arredondo claims he

agreed to do so only on the condition that their handshake agreement was reduced to a signed writing, and he received his equity shares. Santa Rosa understood that Arredondo was "retired" from Oracle (James House Decl. ¶4; Helppie Decl. ¶8) and was working full-time for Santa Rosa running the Texas office in exchange for $15,000.00 a month.

Arredondo drafted a proposed "Partner Agreement" regarding his partner status and equity stake in Santa Rosa. Arredondo e-mailed the agreement to Helppie, who never signed it. In the meantime, in July 2008, Santa Rosa sent Arredondo the first $15,000.00 check to his home in Texas. This was the first payment of a five, for a total of $75,000.00, Arredondo was to receive from Santa Rosa.

Beginning in July 2008, Helppie asked Arredondo to take part in a weekly conference call to discuss the status of the Santa Rosa startup. The calls were initiated by Santa Rosa in Michigan and Arredondo took part at his home in Texas.

In late July, Arredondo put together a deal for Santa Rosa to provide a consultant to IntegraSource. In turn, IntegraSource placed the consultant with the retailer Williams Sonoma. No part of this deal had any connection to Michigan.

On August 11, 2008, Helppie sent an employment agreement to Arredondo via e-mail, designating Arredondo as an employee of Santa Rosa, rather than a founding partner and equity holder. On August 18, 2008, Arredondo flew to Detroit for the second time to discuss his employment arrangement. The parties failed to come to an agreement.

At the end of August, Arredondo made a third trip to Michigan to make a sales presentation on behalf of Santa Rosa to Trinity Health Systems at Trinity's office in Farmington Hills.

In November 2008, Arredondo traveled to California to meet with Los Angeles Children's Hospital to make a sales presentation for Santa Rosa's services.  From California, Arredondo flew to Tampa, Florida to attend the Santa Rosa kick-off meeting.  At the meeting, Arredondo was advised by Santa Rosa that it could no longer afford to pay him the $15,000 per month to maintain the Dallas office.  Arredondo and Santa Rosa mutually agreed to part ways.

In early 2009, Santa Rosa discovered that Arredondo had not provided the company with full-time services as he had contractually agreed.  In June 2009, Santa Rosa demanded that Arredondo return the $75,000 he had received from Santa Rosa, along with $12,000 in expenses, alleging that Arredondo had misrepresented his intention to work "full time" for Santa Rosa.  In its lawsuit, Santa Rosa alleges that it became aware that Arredondo had not terminated his employment relationship with Oracle, and was still an Oracle employee from July 2008 to January 2009.  Santa Rosa contends that when confronted by Helppie, Arredondo apologized for his fraudulent actions and promised to pay back all the money he had received from Santa Rosa.

Arredondo filed its motion to dismiss, claiming that this lawsuit, which was filed in the Eastern District of Michigan, should be dismissed for lack of personal jurisdiction, or alternatively venue should be transferred to the Northern District of Texas.

ANALYSIS

I. Personal Jurisdiction

The plaintiff bears the burden of establishing the existence of personal jurisdiction. Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Welder v. Cromwell Oil Co., 504 F.2d 927, 929 (6th Cir. 1974)). The level of plaintiff's burden depends upon the procedure used by the district court in deciding the issue. Serras, 875 F.2d at 1214.

> If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction." When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff."

Id. (citations omitted). Plaintiff's burden, therefore, is making a prima facie showing that personal jurisdiction exists. Id., see also Air Products and Control, Inc. v. Safetech, 503 F.3d 544, 549 (6th Cir. 2007).

The federal district court possess long-arm jurisdiction only in accordance with the long-arm statute of the state in which it sits. Fed.R.Civ.P. 4 (e). The reach of the state's long-arm statute is limited, however, by the due process clause of the federal constitution. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); International Shoe v. Washington, 326 U.S. 310 (1945).

> The duty of the court is to assure itself that the requirements of both authorities--the state long-arm statute and the due process clause--are met before it can assert its jurisdiction over the person of the defendant.

Serras, 875 F.2d at 1216.

    A.  Limited or Specific Personal Jurisdiction

Michigan's long-arm statute governing limited personal jurisdiction over an individual is M.C.L. § 600.705, which reads in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> . . .
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

M.C.L. § 600.705.  In analyzing the issue of limited personal jurisdiction from the constitutional perspective, the Sixth Circuit has long applied the three part test set forth in Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

International Tech. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 395 (6th Cir. 1997) (quoting Mohasco, 401 F.2d at 381).  The test should not be applied mechanically, and "the facts of each individual case must be weighed in determining whether an exercise of personal jurisdiction would comport with fair play and substantial justice."  Id. at 395 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86 (1985)).

6

1. <u>Purposeful Availment by Defendant of Privilege of Acting in Michigan</u>

The first prong to be considered by the court is whether defendant purposefully availed itself of the privilege of conducting activities in the forum state. Arredondo's contractual relationship with Santa Rosa was negotiated in Michigan, in person as well as via telephone and e-mail. Arredondo traveled to Michigan two times to negotiate the terms of the agreement. The parties disagree about the terms of such agreement, as well as who initiated the idea of Arredondo traveling to Michigan. There is, however, basic agreement that the purpose of Arredondo's trips to Michigan were to discuss and negotiate the terms of an agreement.

There is also agreement between the parties that Arredondo traveled to Michigan a third time to make a sales presentation on behalf of Santa Rosa. In addition, Arredondo participated in weekly conference calls which were initiated in Michigan, and had telephone and e-mail contact with Santa Rosa personnel located in Michigan. (Helppie Decl. ¶¶ 11, 12).

Santa Rosa points out that Arredondo had numerous e-mail communications on Santa Rosa's Michigan-based e-mail system. His e-mail address operated on Santa Rosa's servers, but it is disputed whether those servers were located in Michigan. Arredondo contends that Santa Rosa's e-mail system is a "hosted system" operated by Rackspace Hosting, which is located in Texas. Arredondo did communicate by e-mail and telephone regarding Santa Rosa business with Helppie, Reta Locke and other Santa Rosa personnel located in Michigan.

In <u>Serras</u>, plaintiff was found to have adequately alleged that the defendant purposefully availed himself of Michigan jurisdiction by making telephone calls to

7

Michigan, by traveling to Michigan to solicit business, and by actually making fraudulent representations while in Michigan.  Serras, 875 F.2d at 1217.  Similarly, in this case, Santa Rosa alleges that Arredondo made telephone calls to Michigan, traveled to Michigan to negotiate a contract, and made fraudulent representations while in Michigan.

In another instructive case, Superior Consulting Co., Inc. v. Walling, 851 F.Supp. 839, 844 (E.D. Mich. 1994), the court held it was "impossible . . . to find that Walling did not intend to avail himself of the Michigan forum" where the defendant negotiated the terms of his employment agreement in Michigan, executed the agreement in Michigan, made 31 trips to Michigan while employed by plaintiff; attended client functions in Michigan; and was in nearly daily contact with the Michigan office via telephone, mail and e-mail.  The court concluded that Walling's relationship with plaintiff, a Michigan corporation, "envisioned continuing and wide-reaching contacts" with plaintiff in Michigan, which increased as Walling was promoted.  Id.

In a case that is also factually similar to the case at bar, the court in Kelley Services v. Eidnes, 530 F.Supp.2d 940 (E.D. Mich. 2008) concluded that defendant, a Minnesota resident who had traveled to Michigan only once for a training session, was still subject to personal jurisdiction in Michigan.  The court found that the "evidence viewed in a light most favorable to plaintiff" showed that defendant had accessed a Michigan-based computer server and database networks as part of her job responsibilities and had contact, by e-mail and telephone, with Michigan-based supervisors during the course of her employment.  Id. at 947.  On these facts the court

8

found that defendant had purposefully availed herself of the privilege of conducting activities in Michigan.

In this case, the parties agree that a handshake agreement was negotiated and entered into in Michigan. Arredondo traveled to Michigan on two occasions to seek out a continuing business relationship with Santa Rosa. Santa Rosa alleges that Arredondo's fraudulent misrepresentation that he was retired from Oracle, was made in Michigan. We look at plaintiff's allegations in the light most favorable to plaintiff, in analyzing the complaint for personal jurisdiction. The facts of this case support a finding that Arredondo purposefully availed himself of the privilege of doing business in Michigan.

### 2. Action Arises from Defendant's Contacts with Michigan

Next the court is to consider whether the claims made by plaintiff arise from defendant's activities in the state. The requirement is that the cause of action has a substantial connection with the defendant's in-state activities. Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1091 (6th Cir. 1989).

In this case, Arredondo negotiated the contract in Michigan, as well as via telephone calls and emails with Helppie in Michigan. When the cause of action is for breach of contract, and "the nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a [forum] resident . . . then the cause of action naturally arises from the defendant's actions in [Michigan]." Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998) (citation omitted).

In LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293 (6th Cir. 1989), a Michigan plaintiff contacted the defendant in Florida to purchase property in Florida.

Negotiations included telephone conversations and facsimiles, but defendant never traveled to Michigan to negotiate the contract.  The contract at issue involved a single purchase and not a continuing relationship.  The court found that plaintiff had not shown that its cause of action "arose out of" the defendant's activities in Michigan, and noted that "[w]here the defendant's contacts with the forum state are as attenuated as they are here, however, we think its incumbent on the plaintiff to show affirmatively that the fraudulent misrepresentations were actually made in the forum state."  Id. at 1303.

In this case, unlike in LAK, defendant traveled to Michigan to negotiate the agreement, and the relationship was for continuing services.  In addition, Santa Rosa alleges fraudulent inducement based on fraudulent statements made in Michigan.  Id., Serras, 875 F.2d at 1218.  The court finds sufficient allegations that the causes of action arise from Arredondo's contacts with Michigan.

### 3. Exercise of Jurisdiction over Defendant is Reasonable

Finally, the acts or consequences caused by defendant must have a substantial enough connection with Michigan to make exercise of jurisdiction over defendant reasonable.  Where the first two criteria are satisfied, "an inference of reasonableness arises" and "only the unusual case will not meet this third criterion."  Air Products, 503 F.3d at 554.

Factors to consider include: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy.  Intera Corp. v. Henderson, 428 F.3d 605, 618 (6th Cir. 2005).

Arredondo contends that it would be a great financial burden for him to litigate this case in Michigan. Michigan has an interest in protecting a company whose principal place of business is located in Michigan, so the fact that it would be a burden for Arredondo to travel to Michigan does not make it unreasonable to exercise jurisdiction over him in this state. See Air Products, 503 F.3d at 555.

The court does not find that this is the unusual case where the inference of reasonableness is overcome.

II. Improper Venue

Defendant next argues that venue is improper in the Eastern District of Michigan. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or in which a substantial part of the property that is the subject of the action is situated. In this case, Arredondo negotiated with a company headquartered in Michigan, and actually worked for that company. Arredondo's employment required him to interact with Michigan-based personnel, to interact with Michigan-based computers, to interact with Michigan-based clients or potential clients, and to accept compensation from a Michigan company. Facts such as these were sufficient for finding venue in Michigan in Kelly Services v. Eidnes.

The court finds that venue in Michigan is proper in this case.

III. Transfer of Venue

The change of venue statute, 28 U.S.C. § 1404(a), provides for a transfer of a civil action to another district where the action may have been brought, "for the convenience of the parties and witness [and] in the interest of justice." "As a general

rule, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should not be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946). "[A] plaintiff's choice of forum will be given substantial deference." Audi AG & Volkswagen of America v. D'Amato, 341 F.Supp.2d 734, 749-50 (E.D. Mich. 2004). "[T]he burden is on the defendant to make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

In order to establish whether the forum is sufficiently convenient and in the interest of justice, courts balance private and public interest factors in making the determination. Private interests to be considered include:

> (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative use of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interest of justice.

Steelcase, Inc. v. Mar-Mol Co., Inc., 210 F.Supp.2d 920, 938 (W.D. Mich. 2002). The court also considers public interest factors, including:

> (i) the enforceability of a judgment; (ii) practical considerations, effecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the forum state; and (vi) the familiarity of the trial judge with the applicable state law.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).

Arredondo argues for a transfer of venue to the Northern District of Texas for the convenience of the parties and potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness. Arredondo is an individual, with only his personal financial resources available to fund the litigation, while Santa Rosa is

a consulting business with a national scope. At this point in the litigation, however, the court is unable to assess the relative financial positions of the parties.

Arredondo's non-party witnesses include representatives of IntegraSource and Cendien, both Dallas-based companies, and a consultant based in Oklahoma City. Texas would probably be a more convenient forum for these non-parties. However, as Santa Rosa points out, the non-party witnesses may be deposed if they are unwilling to attend a trial in Michigan. The rest of Arredondo's witnesses are either residents of Michigan, or of a state other than Texas. All of Santa Rosa's witnesses are Michigan residents. While Arredondo's exhibits consist of computer documents stored in Texas, all of Santa Rosa's documents are located in Michigan. Finally, the case is "centered" in Michigan, which is where the contract was negotiated.

This is not a case where the relevant factors strongly favor Arredondo. The court upholds Santa Rosa's choice of forum in Michigan.

## CONCLUSION

For the reasons given from the bench, as well as in this opinion, defendant's motion to dismiss for lack of personal jurisdiction is DENIED, defendant's motion to dismiss for improper venue is DENIED, and defendant's motion to transfer venue is DENIED. Defendant's motions are denied without prejudice such that if discovery in this matter shows otherwise, defendant may bring his motions again.

Dated:  December 22, 2009

           S/George Caram Steeh
           GEORGE CARAM STEEH
           UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 22, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk